**Jenkie H. BUNN, Petitioner–Appellant,**

*v.*

**Joyce K. CONLEY,\* Warden, Respondent–Appellee.**

**No. 99–2658.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 2002.

Decided Oct. 31, 2002.

---

\* Joyce K. Conley is substituted as respondent for Keith E. Olson pursuant to FED. R. APP P. 23(a) following Bunn's transfer to the Federal Correctional Institution at Beaver, West Virginia (FCI Beckley).

Cristina C. Tilley (argued), Mayer, Brown, Rowe & Maw, Chicago, IL, for Petitioner-Appellant.

Gerald A. Coraz (argued), Office of the United States Attorney, Indianapolis, IN, for Respondent-Appellee.

Before CUDAHY, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Jenkie Bunn is a federal prisoner who does not want the U.S. prison authorities to notify local law enforcement personnel upon his release of the fact that he was convicted of a crime of violence. Regulations of the Bureau of Prisons (BOP) provide for such notifications, under certain circumstances. Our problem here, however, is to decide whether Bunn brought the right kind of case, in the right kind of court, against the right defendant. What he did was to file an action for declaratory relief to prevent the Warden of United States Penitentiary at Terre Haute, Indiana (USP Terre Haute), where he was then incarcerated, from making such a notification when the time came. The district court construed his action as a petition for a writ of habeas corpus, asserted jurisdiction over the case, and denied Bunn his requested relief, finding that the BOP had properly classified him as an inmate subject to the notification rules. With full appreciation for the procedural complexity of these matters, we conclude that the district court erred in so doing and that the case must be remanded for further proceedings.

## I

On February 19, 1995, Jenkie Bunn was seen chasing two men with a shotgun and firing upon them. State authorities declined to prosecute him for this conduct. The federal government, knowing that Bunn had a felony conviction on his record, did not wish to overlook the incident. Instead, it prosecuted Bunn for possession of ammunition by a felon in violation of 18 U.S.C. § 922(g). He was found guilty and sentenced to 120 months' imprisonment and three years of supervised release. His projected release date is November 4, 2004.

On October 9, 1996, Bunn was placed in confinement at USP Terre Haute, where Harley G. Lappin was, at the time, the warden. Lappin was replaced by Keith E. Olson in the fall of 2001—after the filing of this action. On November 8, 2001, Bunn was transferred to FCI Beckley, where the warden is Joyce K. Conley. (Despite the fact that Bunn was transferred to a place outside this circuit, the jurisdiction of the district court and hence our appellate jurisdiction is determined by his place of incarceration at the time the suit was filed. We are therefore satisfied that his later transfer has no effect on our ability to entertain this appeal. See *Ward v. United States Parole Comm'n*, 804 F.2d 64, 66 (7th Cir.1986); *Corgain v. Miller*, 708 F.2d 1241, 1245–46 (7th Cir.1983).)

### A. The Notification Scheme

Under 18 U.S.C. § 4042(b), which took effect on September 13, 1994, the BOP must notify the chief law enforcement officer of the state and of the relevant local jurisdiction prior to a prisoner's release (or transfer while on supervised release to a new jurisdiction) whenever a prisoner convicted of "a crime of violence (as defined in section 924(c)(3))" is being released or transferred. 18 U.S.C. § 4042(b)(3)(B).

Program Statement (PS) 5110.11, effective at the time of Bunn's confinement at USP Terre Haute, set forth BOP proce-

dures for these notifications. A program statement is an "internal agency guideline ... which is akin to an interpretive rule that do[es] not require notice and comment." *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (citations omitted). PS 5110.11 defined a "crime of violence" to include several subcategories, including a felony that has "as an element the use, attempted use, or threatened use of physical force against the person or property of another"; or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Clarifying instructions were provided in a separate, cross-referenced program statement PS 5162.02. PS 5110.11 provided that a unit team staff member must complete a notification statement at each program review—a twice-yearly meeting between the inmate and prison staff. The unit team management staff had the responsibility of preparing the forms for Notification of Prisoner Release. The sample form attached to PS 5110.11 provided a name and signature line for the warden or community corrections manager.

PS 5110.11 was replaced by PS 5110.12 on January 21, 1998. The new statement required the case managers to "make their own determination [of the need for notification], based on the narrative description of the crime contained in the Presentence Investigation Report (PSR)," as opposed to merely relying on the PSR's conclusions or making a generalized determination based on the crime of conviction. "Specifically, a determination should be made as to whether the crime has an element of use, attempted use or threatened use of force, or if the offense, by its nature, posed a substantial risk that force would be used." PS 5110.12(6)(b). Section 7(b)(2) further provides that an inmate will be subject to the notification requirement if her "criminal history as determined by staff in the exercise of their professional judgment includes a conviction for ... 'a crime of violence' as defined in section 6.a. or 6.b." PS 5110.12 was in place at the time of Bunn's administrative complaints and through his filing of this lawsuit on April 19, 1999. Using the system laid out in PS 5110.12, the case managers found that Bunn was subject to the notification requirement.

PS 5110.12 was itself replaced by PS 5110.15 on August 30, 2000—after the district court dismissed Bunn's case. PS 5110.15 provides that a crime of violence is a felony and "has as an element, the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense (see 18 U.S.C. § 924(c)(3))." Section 9(b)(2) requires the exercise of professional judgment by the prison staff in the determination of applicability of the provision. That section also says that "[n]otification must not be issued for an offense listed in Section 7 of the Categorization of Offenses Program Statement" (COPS). Section 7 of the COPS, in turn, lists felonies that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." It thus appears that under the later PS 5110.15, notification would not be appropriate for Bunn, at least with respect to his conviction for possession of ammunition. However, as PS 5110.15 makes clear, "if the inmate also has a ... prior violent offense, relative notification should be processed accordingly." Bunn may therefore still be subject to notification because of his prior crimes of violence: second degree murder, two assaults with a deadly weapon, assault for pointing a firearm at a person, and assault inflicting serious injury.

At the time Bunn received his first review by BOP officials (when PS 5110.11 was in place), they found him eligible for notification. Throughout his time at USP Terre Haute, he received periodic reviews, and each of them resulted in a recommendation for notification. There is no evidence in the record that Bunn's notification status has changed as a result of re-evaluations or application of PS 5110.15.

### B. Proceedings

Bunn complained to prison officials about the notification determination and exhausted his administrative remedies. On April 19, 1999, proceeding *pro se,* Bunn filed this suit, which he styled as a "Motion for Declaratory Judgment." He named as respondents the warden of USP Terre Haute and *"et. al.,"* without specifying who those others might be. His pleading was served only upon the warden. This was consistent with the district court's guidance; in its Order to Show Cause, the court stated that the "sole proper respondent in this action is the petitioner's custodian, named in his official capacity only. Any other respondent is dismissed from this action." At this stage, Bunn does not suggest that anyone else was actually involved or that he was about to substitute names for his placeholder *"et. al."* The latter part of the court's order is thus not at issue here.

Bunn's real complaint was that the Program Statements went beyond the authority conferred upon the BOP by 18 U.S.C. § 4042(b). He asked the court to enter an order requiring the BOP to change its Program Statement to reflect the conclusion that convictions under § 922(g) and § 924(a)(2) are not crimes of violence, requiring that the BOP acknowledge that the change would be implemented, and ordering that the BOP correct Bunn's own classification from that of a person with a prior "crime of violence" warranting notification to that of someone incarcerated for a "non-violent offense." He also asked for the removal of the notification finding from his central and institutional files.

After the district court construed Bunn's motion as a habeas corpus petition, and after the entry of the order to show cause, Bunn filed a Motion to Clarify. In that motion, he disputed the district court's interpretation of his pleading as a petition for a writ of habeas corpus rather than a request for declaratory judgment under 28 U.S.C. § 2201. The district court denied that motion on May 5, 1999 "because the determination ... that the petitioner cannot seek habeas corpus relief through the filing of an action for declaratory judgment was correct." After that denial, the court held that it had jurisdiction under 28 U.S.C. § 2241 and entered an order on June 22, 1999 styled as "Entry Discussing Petition for Writ of Habeas Corpus," denying relief to Bunn. The Entry found that the notification requirement properly applied to Bunn both because of the violence associated with his present offense and because of his prior violent offenses. It held as well that the BOP did not apply the statute in a mechanical fashion to Bunn but considered the specific circumstances of his conviction, and found that "this consideration quite reasonably concluded that his § 922(g) conviction was a crime of violence."

## II

The first issue we must address relates to the district court's jurisdiction over the action—something we must do whether or not the parties are satisfied that it was properly established. See *ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 235 F.3d 360, 363 (7th Cir.2000). In this instance, the question of jurisdiction is closely related to the way in which Bunn's claim should have been construed, which is a legal issue we must resolve on our own. See *Preiser*

*v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (dismissing Section 1983 claims that should have been brought as petitions for writ of habeas corpus); *Godoski v. United States,* 304 F.3d 761, 2002 WL 31103020 at *2 (7th Cir.2002) (court must evaluate independently the substance of the claim being brought, to see if correct statute is being invoked).

The confusion that has bedeviled everyone who has encountered this case relates to the line between habeas corpus actions, on the one side, and other kinds of civil actions such as civil rights claims or administrative claims. Bunn, acting *pro se,* believed that he was bringing a general civil action for declaratory relief, which asserted a violation of alleged statutory rights under § 4042. The district court thought that Bunn had mischaracterized the claim and recast it as a habeas corpus petition. Now, his appointed counsel has urged this court to agree with the district court's recharacterization, but to reverse the court's result.

■ Before turning to that question, however, we must look at the court's decision to change the kind of case Bunn was bringing from an action for declaratory judgment to a habeas corpus petition. We have held on several occasions that the district courts should not do this, even if the *pro se* litigant has mistaken the nature of her claim. See *Moore v. Pemberton,* 110 F.3d 22, 24 (7th Cir.1997); *Copus v. Edgerton,* 96 F.3d 1038, 1039 (7th Cir. 1996). As we explained in detail in *Moore,* especially since the enactment of the Prison Litigation Reform Act of 1996 (PLRA) and the Antiterrorism and Effective Death Penalty Act (AEDPA) of the same year, there are pitfalls of different kinds for prisoners using the wrong vehicle. See *Moore,* 110 F.3d at 23–24. If a person files a case as a civil rights action that should have been brought under the habe-

as corpus statutes, "conversion" triggers a much shorter statute of limitations and stringent rules about the ability to file successive petitions. If a person files a habeas corpus petition that should be presented under other statutes, he or she may become subject to the three-strikes rule of the PLRA and somewhat different exhaustion requirements. See generally *Romandine v. United States,* 206 F.3d 731, 737 (7th Cir.2000). The district court should have evaluated Bunn's case as he brought it. For that reason, the fact that his appointed counsel on appeal has no objection to the recharacterization does not matter. We will proceed to consider whether Bunn's effort to obtain a declaratory judgment should have gone forward, or if it should have been dismissed for failure to choose the right procedural vehicle. See *Preiser,* 411 U.S. at 498–500, 93 S.Ct. 1827.

■ For present purposes, the answer to the declaratory relief versus habeas riddle is suggested by *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir.1991), where we held that "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation ... then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law." *Id.* See also *Pischke v. Litscher,* 178 F.3d 497, 500 (7th Cir.1999), *cert. denied,* 528 U.S. 954, 120 S.Ct. 379 (holding that habeas is the proper vehicle for presenting a claim "if but only if the prisoner is seeking to 'get out' of custody in a meaningful sense").

Bunn argues that his claim indeed does relate to the "fact or duration" of his confinement. He submits that, while the re-

porting itself is not a "fact or duration of confinement," it is a part of his sentence, relying on *Valona v. United States,* 138 F.3d 693, 694 (7th Cir.1998) (*Valona I* ). But the fact that the notification is connected to the sentence does not advance the analysis, because even conditions of confinement are related to a person's sentence and affect its severity (such as the difference between living in the general population or in disciplinary segregation), and prison conditions are certainly contemporaneous with the sentence. Bunn also argues that if the notification takes effect upon his release into the general public, new limitations on his ability to move freely will be put in place. See *Falcon v. United States Bureau of Prisons,* 52 F.3d 137, 139 (7th Cir.1995) (endorsing the "level of confinement" test). For example, he will have to report to his probation officer any instance in which he has contact with police.

█ Even assuming that reporting requirements are more onerous for released prisoners subject to BOP notifications, this fact does not make those requirements something that adds to the length of a person's confinement. The better analogy is to changes in levels of security within a prison, or changes from one prison to another, which cannot be attacked using the habeas corpus statutes. See *DeWalt v. Carter,* 224 F.3d 607, 617 (7th Cir.2000). See also *Graham,* 922 F.2d at 381 (if a prisoner is challenging "merely the conditions of his confinement his proper remedy is under the civil rights law"); *Pischke,* 178 F.3d at 499 (habeas corpus available only if challenged transfer from one prison to another is so much more restrictive as to amount to a quantum change in the level of custody). Furthermore, Bunn's reporting duties—like those of every person on supervised release—are established by the terms of his supervised release and have nothing to do with the notification. In fact, a reporting obligation is a standard

condition of supervision under the Sentencing Reform Act of 1984. The leap Bunn seeks to make from the BOP's notification to local authorities to the reporting is quite broad: Bunn's contention is that because of the required notification, he will have more encounters with law enforcement, which, under the terms of his supervised release, will require that he report more often to his probation officer. This is not what is meant by a "fact or duration" of confinement. The notification scheme in no way affects the duration, much less the fact, of confinement. His supervised release will still be in place, and it will last just as long. It does not make his period of incarceration any more extensive, unlike something like a revocation of eligibility for parole. See, *e.g., Board of Pardons v. Allen,* 482 U.S. 369, 371–72, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). At this juncture, Bunn's claim, if he has one at all (and we make no comment on that question), looks much more like one challenging a civil disability that outlasts his prison sentence. Compare *Doe v. Connecticut Dept. of Pub. Safety,* 271 F.3d 38 (2d Cir.2001), *cert. granted,* —— U.S. ——, 122 S.Ct. 1959, 152 L.Ed.2d 1020 (2002) (action under 42 U.S.C. § 1983 challenging sex offender registration law); *Doe I. v. Otte,* 259 F.3d 979 (9th Cir.2001), *cert. granted,* 534 U.S. 1126, 122 S.Ct. 1062, 151 L.Ed.2d 966 (2002) (same). It is not something that concerns his confinement.

Our conclusion about the proper approach to Bunn's claim is consistent with that drawn by two of our sister circuits. *Henrikson v. Guzik,* 249 F.3d 395 (5th Cir.2001), held that habeas corpus was the wrong action for this sort of challenge, but that it could be entertained as a declaratory judgment action. *Id.* at 397 n. 4. *Royce v. Hahn,* 151 F.3d 116 (3d Cir.1998), simi-

larly held that a challenge to the notification requirement ought to be raised as a claim for declaratory judgment. *Id.* at 118. See also *Bush v. Pitzer*, 133 F.3d 455, 456–57 (7th Cir.1997) ("[A] prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative official made a mistake in the implementation of a statute or regulation.").

 To begin with, we do not agree with the government's contention that Bunn's concern falls into some sort of a jurisdictional black hole. While the Declaratory Judgment Act does not confer independent jurisdiction, it is sufficient that the underlying claim itself satisfy the jurisdictional requirements. See *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Consequently, to address Bunn's complaint about the BOP's power to issue the various program statements under its enabling legislation, we must determine whether his claim "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and then whether it is ripe for consideration at this point.

Two possibilities exist: a claim against the person actually making the notification brought under the theory outlined in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and a claim against the BOP under the provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* Unfortunately for Bunn, there are problems with either route.

 There is no merit to the warden's argument that a *Bivens* claim cannot be brought when the relief sought is not in the form of damages. A *Bivens* claim can be brought as an allegation that a constitutional injury arose out of the actions of federal agents—regardless of the nature of the relief sought. See, *e.g., Farmer v.*

*Brennan,* 511 U.S. 825, 851, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (vacating the dismissal of a prisoner's *Bivens* action in which the prisoner sought injunctive relief). There is, however, a more fundamental problem: *Bivens* claims are brought against the relevant officials in their individual capacity, and Bunn's suit against the warden is plainly an official capacity action. That is why, by operation of law, both the district court and this court have substituted each of Bunn's new wardens. See FED. R. CIV. P. 25(d)(1); FED. R. APP. P. 43(c)(2). Furthermore, and independently, any *Bivens* claim is probably unripe (because we don't even know which warden would be notifying law enforcement authorities, or if by the time Bunn is ready to be released the responsible warden would have applied whatever program statement is then current). (Before trying any *Bivens* action, Bunn should take heed of the penalties imposed by the PLRA for bringing a frivolous claim.)

 It seems to us that the more appropriate defendant is indeed the BOP, and that Bunn is really trying to bring an APA claim against it. See *Valona v. United States Parole Comm'n*, 165 F.3d 508, 510 (7th Cir.1998). The APA applies to the Bureau of Prisons, see *White v. Henman*, 977 F.2d 292, 293 (7th Cir.1992), and therefore may be the appropriate way to contest the Bureau's implementation of PS 5110.15. See also *Bush v. Pitzer*, 133 F.3d at 457. Moreover, it may even have been correct to sue the warden as the BOP's agent, although this is a closer question.

We do not mean to imply, however, that we think this suit has much of a future, at least if the program statements remain approximately the same. A look at the history of this case suggests that a great deal of effort has been expended on an irrelevant issue: whether 18 U.S.C. § 4042(b) empowers the BOP to notify law

enforcement representatives of the release of a felon into the community, or whether PS 5110.15 is consistent with § 4042(b). The reason why both questions are beside the point is that they focus on a statute that does not prohibit the BOP from doing certain things; instead, it requires the BOP to do other things—that is, to notify the state and local authorities under certain circumstances. It is aptly entitled "Duties of Bureau of Prisons." It is a substantial stretch to infer from Congress's decision to impose this duty on the BOP the additional notion that Congress meant to forbid the BOP from notifying interested public authorities in other situations, or in fact from doing a whole host of other things.

■■■ If § 4042(b) does not place a limit on the BOP's right to tell the world about a prisoner's supervised release, her location, and her crime of conviction, something else must. Perhaps Bunn is thinking of due process, but for such a claim he must also recall that "[i]t is axiomatic that before due process protections can apply, there must first exist a protect[a]ble liberty or property interest." *Solomon v. Elsea,* 676 F.2d 282, 284 (7th Cir.1982). (Even under *Bivens,* incidentally, Bunn would need to assert a recognizable liberty interest. See *Booher v. United States Postal Serv.,* 843 F.2d 943, 944 (6th Cir. 1988).) That interest cannot be Bunn's reputation, standing alone. See *Paul v. Davis,* 424 U.S. 693, 701, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■■ Because of all the problems—present and potential—with Bunn's action, we think the best course is simply to remand the case to the district court for further proceedings consistent with this opinion. *Valona I* hinted that the proper thing to do would be to remand for the APA claim: "Perhaps, then, Valona's petition should be understood as a suit under the APA seeking review of agency action.

Litigants need not plead legal theories, and district judges should afford the relief to which the prevailing party is entitled without regard to errors in the pleadings. But the proper characterization of Valona's claim is something for the district court to work out on remand." 138 F.3d at 695 (citations omitted). However, in *Valona I* the proper defendant had been named, whereas in this case the Bureau of Prisons has not even been apprised of the ongoing litigation. It will be Bunn's choice whether to proceed at all with the litigation, assuming that the district court finds it ripe for adjudication. He should approach any such step with caution, particularly given the observations we have made about the nature of the existing scheme and the district court's alternate ground that the BOP was entitled to notify local authorities because of his prior convictions, even setting aside the conviction that underlies his present imprisonment.

### III

For the foregoing reasons, we Reverse the judgment of the district court and Remand for further proceedings consistent with this opinion. We express no opinion on the validity of the notification scheme under PS 5110.15 or any earlier program statement.