# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1226

STEVEN A. GLAUS,

*Petitioner-Appellant*,

v.

CARL ANDERSON, Community Corrections
Manager for the Southern District of
Illinois, Eastern District of Missouri,
and Southern District of Indiana,[*]

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-1114-JLF—**James L. Foreman**, *Judge.*

_____

ARGUED SEPTEMBER 8, 2004—DECIDED MAY 17, 2005

_____

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Steven Glaus is a prisoner suffering from hepatitis C, a serious liver disease. Although he

---

[*] We have substituted Carl Anderson, who is the Community Corrections Manager over the Corrections Center where Glaus is currently housed. We understand from Warden Randy Davis's Motion for Leave to Transfer that this is a halfway house in Farmington, Missouri.

received some medical care for his condition, the prison authorities at FPC Marion stopped treating Glaus in March 2002. In October of that year, Glaus filed a petition for a writ of habeas corpus, in which he combined a request for transfer to another institution or release with a plea that the prison resume his treatment. The district court dismissed Glaus's *pro se* petition without prejudice in January 2003, concluding that Glaus's claim was not covered by habeas corpus. The court declined to recharacterize Glaus's petition as a civil rights claim. Both actions were correct, as far as they went, and we thus affirm the judgment of the district court. Nevertheless, this appeal shows that Glaus did not understand the consequence of the district court's decision. The court never spelled out to Glaus why it was dismissing his petition without prejudice. Had Glaus realized the nature of his mistake, he might well have refiled a proper claim, against the proper defendants, rather than wasting his time with this appeal. We therefore have taken the opportunity in this case to recommend procedures for the future that may eliminate some unnecessary steps in similar prisoner litigation.

# I

At the time of this appeal, Glaus was an inmate at the federal prison in Farmington, Missouri. Glaus, aged 54, has hepatitis C, a slow-developing, but potentially fatal liver disease. In March 2001, while at the federal prison in Marion, Illinois, Glaus began receiving treatment for his liver condition. For one year, the prison treated Glaus with interferon, a protein that combats viral infection. During this treatment, Glaus's hepatitis C viral load (that is, the number of viral RNA particles per milliliter of blood) dropped from more than 21 million to just over one million. Despite this apparent improvement, the prison authorities stopped treatment in March 2002, deeming Glaus a "non-responder."

According to the North Central regional director of the Federal Bureau of Prisons (BOP), interferon treatment may continue only if the patient-inmate's viral load drops below one million. Thus, despite the dramatic improvement Glaus experienced, the warden denied his request for continued treatment, stating, "No matter how much of an improvement this is from the pre-treatment values, it is considered a treatment failure and the current recommendations call for the discontinuation of the interferon." At a viral load of just over one million, Glaus was close, but not close enough. In September 2002, six months after Glaus's treatment had ended, his viral load had reached 189 million.

In his administrative remedy request, Glaus asked to be put back on the interferon or to receive a newer form of treatment, called Peg-Interferon, which combines a slower acting form of interferon, Pegylated-Interferon 2B, with Ribavarin, an anti-viral medication.

The administrator for national inmate appeals denied Glaus's request, because "[c]ontinuing interferon beyond 12 months is still considered to be experimental" and while "re-treatment of nonresponders with Peg-Interferon may be considered on a case-by-case basis, . . . [y]our genotype and pre-treatment viral load . . . predict that you would not respond to Peg-Interferon."

After exhausting his administrative remedies, Glaus, acting *pro se*, submitted a petition for writ of habeas corpus to the district court, relying on 28 U.S.C. § 2241. The petition requested transfer to a prison medical facility for a new course of Peg-Interferon or, in the alternative, release to the community so that Glaus could receive treatment from a local Veterans Affairs hospital. One transfer or the other was necessary, Glaus argued, because his current custodians were deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights.

The district court ruled that Glaus's § 2241 petition did not fall within the bounds of the writ, because it dealt with matters properly handled in a civil rights action. "It is clear, given his Eighth Amendment argument, that petitioner is challenging the conditions, as opposed to the fact, of confinement." The court then refused to recharacterize Glaus's petition as a civil rights complaint, "because petitioner would face obstacles under the Prison Litigation Reform Act." Without saying anything more, the court concluded it was "unable to provide the relief sought" and dismissed Glaus's petition without prejudice.

## II

On appeal, Glaus argues that the district court improperly dismissed his § 2241 petition and that even if habeas corpus was not the proper avenue, the district court should have recharacterized his petition as a civil rights complaint. We disagree. The court's decision tracked well-recognized boundaries between habeas corpus and civil rights claims, and its decision not to recast the case reflected important substantive and procedural differences between the two kinds of suits.

Before discussing the merits of Glaus's appeal, we must confront an issue of appellate jurisdiction. The district court dismissed Glaus's claims without prejudice and "in the usual case, such a dismissal does not qualify as an appealable final judgment because the plaintiff is free to re-file the case." *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001). We have even gone so far as to state that dismissals without prejudice are "canonically non-final." *Am. States Ins. Co. v. Capitol Assoc. of Jackson County, Inc.*, 392 F.3d 939, 940 (7th Cir. 2004). Nonetheless, not all such dismissals are subject to the rule. There is an exception "if there is no amendment [a plaintiff] could reasonably be expected to offer to save the complaint, or if a new suit would be barred by

the statute of limitations." See *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003).

Here, the district court dismissed Glaus's petition because Glaus pursued the wrong theory against the wrong party (the warden, in his capacity as custodian). The court thought that since Glaus was complaining about constitutionally deficient medical care, Glaus's habeas corpus petition was really a classic "conditions of confinement" claim. See *Estelle v. Gamble*, 429 U.S. 97 (1976). Glaus did not, and does not, see the case that way, principally because the relief he was requesting involved various transfers away from his place of confinement. He even seems to suggest that the prison's failure to treat him should result in his release, a remedy that may be sought only under habeas corpus. For purposes of appellate jurisdiction, however, the important fact is that no amendment Glaus could make to *this* petition can save it. We therefore have jurisdiction under 28 U.S.C. § 1291.

Turning to the substance of Glaus's appeal, we review *de novo* the district court's decision to dismiss Glaus's petition. See *Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003). Glaus makes two arguments for why filing under § 2241 was proper. First, Glaus argues that because release from custody is only available under habeas corpus and he sought release as a remedy for his Eighth Amendment claim, he *had* to use § 2241 (implying that this claim does not implicate either his conviction or his sentence, and thus that he does not need to use 28 U.S.C. § 2255). Second, relying principally on several older district court decisions, Glaus argues that civil rights actions are not the exclusive remedy for denials of medical treatment. He urges, in other words, that there is space within the bounds of habeas corpus for challenging unconstitutional prison conditions.

In *Preiser v. Rodriguez*, the Supreme Court held that the writ of habeas corpus was the exclusive civil remedy for prisoners seeking release from custody. 411 U.S. 475, 489

(1973). As the Court noted, "[i]t would wholly frustrate explicit congressional intent to hold that the respondents . . . could evade [the writ's exhaustion] requirement by the simple expedient of putting a different label on their pleadings." *Id.* at 489-90; see also *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005) (noting that "a state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Although the Court was comparing habeas corpus to the requirements facing state prisoners filing under 42 U.S.C. § 1983, its rationale applies just as soundly to federal prisoners filing a claim based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the federal equivalent of § 1983.

If a prisoner is not challenging the fact of his confinement, but instead the conditions under which he is being held, we have held that she must use a § 1983 or *Bivens* theory:

> If the prisoner is seeking what can be fairly described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, . . . then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative he seeks.

*Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991).[**]

---

[**] The passage quoted in text also refers to the possibility of habeas corpus for a change from having the run of the prison to being restricted to solitary confinement. In recent years, however,

(continued...)

As release is not available under *Bivens*, Glaus's habeas corpus petition would be proper if release were among the possible remedies for an Eighth Amendment deliberate indifference claim. Unfortunately for Glaus, it is not. If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option. Accord *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990); *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979); *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1978). Since release is unavailable, Glaus's complaint necessarily concerns only the conditions of his confinement and thus must be brought as either a civil rights claim or possibly a Federal Tort Claims Act claim against the United States or an Administrative Procedures Act challenge to the BOP guidelines on treatment for hepatitis C.

Glaus responds to this conclusion by arguing that while there may be no room within civil rights law for the remedy of release, there is room within the writ of habeas corpus to challenge unconstitutional prison conditions. In *Preiser*, the Supreme Court left open the possibility that litigants could use writs of habeas corpus in this fashion. See 411 U.S. at

---

[**] (...continued)

the Supreme Court has indicated that prisoners do not have a liberty interest for purposes of civil rights actions in anything but the most dramatic differences in levels of confinement. See *Sandin v. Conner*, 515 U.S. 472 (1995); see also *Wilkinson v. Austin*, 125 S. Ct. 686 (2004) (granting certiorari on the issue of what due process rights a prisoner has prior to placement in super-maximum security facility) (argued March 30, 2005). As we discuss below, although the Supreme Court has never expressly ruled out the use of habeas corpus to address that kind of change, it has never held that habeas corpus is an option for these claims either. In the absence of further guidance, we choose not to take that step here.

499 ("This is not to say that habeas corpus may not also be available to challenge such prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.") (internal citations omitted). Later, the Court expressly left "to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement." *Bell v. Wolfish*, 441 U.S. 520 (1979). After 25 years, that day has yet to arrive. Most recently, in *Nelson v. Campbell*, 124 S. Ct. 2117, 2124 (2004), the Court held that some "civil rights damages actions . . . fall at the margins of habeas," implying that in some circumstances civil rights actions and writs of habeas corpus may be coextensive.

While the Supreme Court has left the door open a crack for habeas corpus claims challenging prison conditions, it has never found anything that qualified. Without further guidance from the Court, it is premature to question *Graham*. *Graham* outlines a clear distinction: a petitioner requests either a "quantum change in the level of custody," which must be addressed by habeas corpus, or "a different program or location or environment," which raises a civil rights claim. 922 F.2d at 381. Since release is unavailable to Glaus, his challenge can only concern the conditions of his confinement or the administrative rules the BOP is using, not the fact of his confinement. As such, he may not proceed with a habeas corpus petition. See also *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) (holding that habeas is the proper vehicle for presenting a claim "if but only if the prisoner is seeking to 'get out' of custody in a meaningful sense."). Accordingly, the district court was correct in finding that Glaus could not proceed with his habeas corpus petition.

Glaus argues in the alternative that if § 2241 was not the proper vehicle for his complaint, the court should have

converted his petition into a civil rights claim given his *pro se* status. While recharacterization may still be available in a narrow set of circumstances, those circumstances are not present here.

In *Graham*, we wrote that if a *pro se* litigant "asks for habeas corpus when he should have brought a civil rights suit, all he has done is mislabel his suit, and either he should be given leave to plead over or the mislabeling should simply be ignored." 922 F.2d at 382. In *Bunn v. Conley*, 309 F.3d 1002 (7th Cir. 2002), however, we recognized that the proper scope of recharacterization had been narrowed as a result of the changed landscape caused by the Prison Litigation Reform Act of 1996 (PLRA) and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). "[T]here are pitfalls of different kinds for prisoners using the wrong vehicle. . . . If a person files a habeas corpus petition that should be presented under other statutes, he or she may be subject to the three-strikes rule of the PLRA and somewhat different exhaustion requirements." *Id.* at 1007. Other important differences include the identity of the defendant (the warden, versus the doctors, or guards, or others responsible for the alleged injury), the amount of the filing fee, the way in which exhaustion must be accomplished, and the type of restriction on successive lawsuits. In most cases, therefore, the district court should evaluate cases as the plaintiffs label them. *Id.*

This is not to say that recharacterization is utterly out of the question. In *Castro v. United States*, the Supreme Court considered the reverse of the current situation: recharacterization of a *pro se* litigant's civil rights claim into a petition under 28 U.S.C. § 2255. See 540 U.S. 375, 383 (2003). The Court noted that a district court may recharacterize a civil rights claim, but before doing so it "must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions

on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or amend it so that it contains all the § 2255 claims he believes he has." *Id.* It seems to us that the same logic should apply to the potential conversion of a habeas corpus petition into a civil rights claim. If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the *pro se* litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.

In this case, Glaus's complaint was not amenable to conversion. While Glaus sought injunctive relief, which is a proper remedy for a *Bivens* claim, the warden would almost surely not be the proper defendant if the district court were to convert Glaus's petition into a civil rights claim or an administrative action. See *Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) ("The right respondent in a § 2254 action is the warden of the prison; the right defendants in a § 1983 suit are the persons whose wrongful acts harmed the plaintiff (and the warden is rarely a proper defendant, because he is not vicariously liable for subordinates' acts)."). Like state prisoners suing under § 1983, federal prisoners suing under *Bivens* may sue relevant officials in their individual capacity only. In this instance, Glaus's suit against the warden appears to be an action against the warden in his official capacity. The fact that, by operation of law, both the district court and this court have substituted each of Glaus's new wardens as defendants evidences this reality. See FED. R. CIV. P. 25(d)(1); FED. R. APP. P. 43(c)(2). It is also worth noting that the original individuals who stopped Glaus's medical treatment were at the Marion prison, and that they appear to have ended Glaus's treatment in reliance on a general rule that the BOP follows. The record tells us nothing about what the doctors at Farmington are doing or not doing.

Under these circumstances, the district court was correct to dismiss Glaus's petition without prejudice. The practical problem Glaus now faces comes from the fact that the court accompanied its order with only the briefest of explanations. In its two-page order, the district court wrote: "While courts sometimes construe a mistakenly-labeled habeas petition as a civil rights complaint, it would be inappropriate to do here, because petitioner would face obstacles under the Prison Litigation Reform Act. Therefore, the Court is unable to provide the relief sought. Accordingly, this habeas corpus action is dismissed without prejudice." Glaus argues that this statement was misleading, leaving him to believe that he had no recourse but to appeal the court's ruling.

In *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), we held that in the context of summary judgment, "a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment." *Id.* at 102. We were concerned in *Lewis*, as we are concerned here, that certain procedural requirements would be lost on some untrained, unrepresented prisoner-litigants. This is particularly so when an "aspect of federal civil practice is contrary to lay intuition." *Id.* In this instance, the court prefaced its dismissal with the flat statement that it was "unable to provide the relief sought," suggesting that the court's dismissal without prejudice was more significant than it was. As a matter of lay intuition, it is quite possible that a *pro se* litigant could read the court's decision as one that precluded any other suits on the underlying facts.

In keeping with the approach dictated by the Supreme Court in *Castro* and our own rule in *Lewis*, we believe that the district courts should make clear exactly what it is they are, and are not, doing when they dismiss a *pro se* prisoner-litigant's complaint without prejudice because it was brought either as a habeas corpus petition or a civil rights action, and it should have been the reverse. If, as normally will be

the case, conversion is improper, the district court should include a short and plain statement in its order that states: (1) that the court is not making a decision on the ultimate merit of the case; (2) that the prisoner may refile immediately under the proper legal label, subject to the normal rules such as those prohibiting frivolous lawsuits; and (3) that refiling under the proper label will probably have certain consequences. Had this procedure been in effect for Glaus's case, the court would have informed Glaus that if he chose to pursue a *Bivens* claim or an action challenging the BOP's policy, an adverse decision might count toward the three free civil rights claims the PLRA allows him. See 28 U.S.C. § 1915(g).

Glaus's deliberate indifference claim alleges a continuing violation, and the record contains no indication that the BOP has changed the policies that forced the end of Glaus's treatment. We note also that his habeas corpus petition naturally included no request for damages. We therefore need not decide whether Glaus is entitled to have the statute of limitations tolled for any new claims, to the extent that they rely on policies or actions that have continued unabated. We express no opinion on any other aspect of any future action he might bring.

### III

While we have recommended a procedure that should ensure that district courts in the future provide *pro se* litigants with better guidance, this is not intended to criticize the district court here. In fact, as we have explained, the court correctly concluded that Glaus's deliberate indifference claim could not be brought under 28 U.S.C. § 2241 and that conversion was not the proper step to take. We therefore AFFIRM the judgment of the district court.

No. 03-1226                                                                                    13

A true Copy:

  Teste:

          _____
          *Clerk of the United States Court of*
          *Appeals for the Seventh Circuit*