NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2007[*]
Decided October 31, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1674

| | |
|---|---|
| MICHAEL GLOVER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 05-C-869 |
| STEVEN HAFERMAN, et al., *Defendants-Appellees.* | Rudolph T. Randa, *Chief Judge.* |

**O R D E R**

Wisconsin inmate Michael Glover principally argues in this appeal that the district court erred in granting summary judgment for three prison employees who, Glover says, interfered with his treatment for hepatitis C. Glover also argues that the court erroneously dismissed at the screening stage a claim that one of those employees sexually assaulted him in retaliation for submitting prison grievances about the employee. We reject both contentions.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

It is undisputed that Glover has hepatitis C.  He began treatment for this disease in October 2004 while confined at Kettle Moraine Correctional Institution. He first signed a consent form, which warned that the regimen of Interferon injections and Ribavirin pills "may have serious side effects, including but not limited to worsening of liver inflammation, anemia, allergic reaction, heart attack, severe depression, suicide, pneumonia, loss of vision, or thyroid disease."

On January 5, 2005, Nurse Debra Palm completed a medical restriction form that required Glover to be housed in a cellblock close to the medical unit.  The completed form includes no explanation for the restriction.  Glover was moved to Unit 10, but four months later, on April 18, Captain Steven Haferman ordered him transferred from Unit 10 to a more-distant cellblock.  That order was prompted by Haferman's investigation of a grievance Glover submitted alleging that Sergeant Scott Jaber, a correctional officer in Unit 10, had repeatedly grabbed his genitals during pat-down searches.

That same day Glover submitted a grievance contesting the transfer because it violated the medical restriction.  At Captain Haferman's request, Nurse William McCreedy, the manager of the medical unit, reviewed Glover's medical records including the January medical restriction.  McCreedy concluded that the restriction was unnecessary so long as Glover was provided transportation to the medical unit for treatment.  Haferman then proceeded with Glover's transfer out of Unit 10. Glover responded by informing prison officials that the transfer had "forced" him to stop participating in hepatitis treatment, although he did not explain the basis for this conclusion.

Glover was moved to a different prison about a month later, and it is unclear whether he resumed treatment.  He then filed this action under 42 U.S.C. § 1983 against Captain Haferman, Nurse McCreedy, and Sergeant Jaber.  Glover also named several other defendants including the warden, a prison doctor, and a grievance examiner, but none of them had any personal involvement in these events and are not relevant to this appeal. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  In his complaint Glover alleged that prison officials deliberately ignored his medical needs by moving him out of Unit 10 in response to his grievance against Jaber. Glover asserted that by moving him farther from the medical unit, the defendants effectively denied him treatment for his hepatitis C because he no longer could get prompt medical attention if he continued the hepatitis treatment and suffered a heart attack as a side effect.  Thus, he said, he became severely ill.  Glover attached to his complaint evidence that he exhausted his administrative remedies, including a copy of his grievance against Jaber.  The district court screened the complaint, *see* 28 U.S.C. § 1915A, and, as relevant here, allowed Glover to proceed on his claim of

deliberate indifference. The screening order includes no mention of a sexual-assault or excessive-force claim against Jaber.

The defendants moved for summary judgment. They submitted affidavits establishing that Captain Haferman conferred with Nurse McCreedy regarding the medical restriction before transferring Glover out of Unit 10. Affidavits from McCreedy and Nurse Palm provide further evidence that Palm had not documented her reason for restricting Glover to Unit 10 and could not explain the restriction when questioned by McCreedy. McCreedy maintained that after speaking with Palm and reviewing Glover's medical file, he concluded that the restriction was unnecessary.

Glover responded to the defendants' motion with his own affidavit. He averred that Nurse Palm completed the medical restriction in response to his reports of chest pains and told him that he should be housed close to the medical unit because the hepatitis C treatment placed him at an increased risk of heart attack. Therefore, Glover contended, he effectively was denied treatment when he was moved in violation of Palm's directive because if he continued taking his prescribed treatment and suffered a heart attack he would be too far from the medical unit to receive prompt care. Glover also argued in his response that the defendants had not addressed a claim of sexual assault against Sergeant Jaber. That purported claim arose from the pat-down searches mentioned in the grievance attached to the complaint. The defendants objected that this claim was not in the complaint and thus not part of the suit.

The district court granted summary judgment for the defendants, reasoning that Glover lacked evidence that any defendant had the requisite mental state. The court did not explicitly comment on the disagreement between the parties concerning whether Glover had pleaded a sexual-assault claim (more precisely, an excessive-force claim) against Sergeant Jaber.

We review a grant of summary judgment de novo, construing all facts and reasonable inferences in favor of the nonmoving party. *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007). As an initial matter, Glover argues that the district court committed error when it declined to strike affidavits notarized by a woman who is married but uses her maiden name on her notary seal. This contention is frivolous; the legal authorities Glover cites in support of his argument in fact establish that the notary's use of her maiden name was entirely appropriate. *See* 1912 Op. Wis. Atty. Gen. 256 (1923); 1912 Op. Wis. Atty. Gen. 775 (1910).

To succeed on an Eighth Amendment medical claim, an inmate must demonstrate that prison officials were deliberately indifferent to a serious medical need. *E.g., Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). Glover's complaint

alleges that the decision to transfer him increased the danger that a heart attack he might suffer as a side effect of his treatment for hepatitis C could be fatal, and thus the defendants effectively denied him treatment for hepatitis C by compelling his unilateral decision to stop taking his hepatitis medications. We agree with Glover that the district court properly construed the underlying serious medical condition as hepatitis C. *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam); *Glaus v. Anderson*, 408 F.3d 382, 384 (7th Cir. 2005). Glover did not claim, as the defendants continue to insist, that their conduct showed indifference to an elevated risk of heart attack.

But the district court also was correct to conclude that Glover failed to produce any evidence that the defendants were deliberately indifferent to his hepatitis. Sergeant Jaber had no part in moving Glover, and Captain Haferman, who gave the order, was anything but indifferent. Prison officials without medical training are not deliberately indifferent to a serious medical need where, as Haferman did here, they consult with medical personnel to ensure that those officials are monitoring and addressing the prisoner's medical condition. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-12 (7th Cir. 2006); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Far from turning a blind eye to Glover's hepatitis C, Haferman sought out and deferred to the judgment of Nurse McCreedy, the manager of the medical unit, before deciding that Glover could be moved despite the medical restriction on his housing assignment.

As for Nurse McCreedy, who effectively approved the decision to move Glover away from the medical unit, the question is whether he knew of a substantial risk of harm to Glover and ignored that risk. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996). Neither medical malpractice nor simple disagreement with a medical professional's judgment constitutes deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007).

Here, there exists no evidence that Nurse McCreedy's decision to overrule the medical restriction put in place by Nurse Palm forced Glover to abandon his hepatitis treatment to prevent a greater harm from a potential heart attack. Less than 2% of individuals undergoing treatment for hepatitis C suffer severe side effects, *see* Centers for Disease Control and Prevention, Hepatitis C Frequently Asked Questions, http://www.cdc.gov/ncidod/diseases/hepatitis/c/faq.htm#4f (last visited Oct. 31, 2007), and it is undisputed that McCreedy learned nothing from his conversation with Palm or from his review of Glover's medical file that alerted him to any heightened risk of heart attack faced by Glover. Indeed, Glover submitted no evidence that he suffered from continued chest pains following his initial complaint to Palm in January 2005. He simply disagrees with McCreedy's assessment that he

could safely reside farther from the medical unit and continue treatment for hepatitis C.

Moreover, even if there was evidence that Nurse McCreedy believed that Glover was at a higher risk of heart attack, the result would be the same. Glover faces the same risk of heart attack no matter where he is housed and, to have even a plausible claim, he needed evidence that his new housing unit was so much less capable of responding to a potential heart attack that the transfer created a substantial risk of harm that McCreedy ignored. Glover provided no evidence that his risk of heart attack was substantial, or that his new housing unit was unequipped or incapable of responding in the event of a heart attack, or even that the new unit was significantly farther from the medical unit. Accordingly, he failed to meet his burden of establishing that McCreedy was deliberately indifferent.

That leaves Glover's argument that the district court erroneously dismissed at the screening stage a claim against Sergeant Jaber for sexually assaulting him several times during pat-down searches because of grievances Glover had submitted about the guard. Jaber contends that the court could not have screened out this claim because it is not in the complaint, and we agree. Even Glover admits that no such claim is clearly articulated in his complaint, and although we construe pro se filings liberally, *see Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), the plaintiff's pleadings still must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation marks and citations omitted); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). In his complaint Glover makes only two brief references to the alleged incident involving Jaber, both in the context of explaining how the grievance he submitted about Jaber's conduct prompted Captain Haferman to investigate and to follow protocol by separating Glover from Jaber pending a resolution. Glover did attach his grievance about Jaber's conduct to his complaint, but by doing so he did not put Jaber on notice that he claimed that Jaber's actions alone, unrelated to the subsequent transfer, violated his constitutional rights. Glover first mentioned this purported claim in his response to the defendants' motion for summary judgment, which is too late. He never sought leave to amend his complaint to add this claim, nor did Jaber, through his actions during the lawsuit, even litigate the claim or imply his consent that the suit expand to include it. *See Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005); *In the Matter of Prescott*, 805 F.2d 719, 725 (7th Cir. 1986). Thus, the district court did not err when it refrained from addressing the claim at summary judgment.

AFFIRMED.