FILED
United States Court of Appeals
Tenth Circuit

July 13, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ANDRE LAMONT THURSTON,

Petitioner - Appellant,

v.

CLAUDE CHESTER, Warden, USP-
Leavenworth,

Respondent - Appellee.

No. 10-3053

(D. Kansas)

(D.C. No. 5:09-CV-03028-RDR)

---

ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

Andre Lamont Thurston, a federal prisoner appearing pro se, appeals the

dismissal by the United States District Court for the District of Kansas of his

application for relief under 28 U.S.C. § 2241. He also appeals the denial of his

motion for reconsideration. He claims that he will suffer the effects of not

participating in the Federal Bureau of Prisons' Inmate Financial Responsibility

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Program (IFRP) because the Bureau has improperly interpreted the regulations governing the IFRP. The district court rejected his claim and he appeals. We affirm.

On July 1, 1996, Mr. Thurston was sentenced to 360 months' imprisonment, five years' supervised release, a $50 criminal assessment, $3,000 restitution, and a $17,100 fine for conspiracy to possess with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 846. He has paid the assessment and restitution in full, but has a balance of over $14,000 due on his fine.

The purpose of the IFRP is to "encourage[] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. Under the program, prison staff assist an inmate in developing a financial plan to meet those obligations, and monitor the inmate's progress under the plan. *See id.* § 545.11. An inmate is responsible for maintaining progress in fulfilling the financial obligations of the plan. *See id.* § 545.11(b). "Payments may be made from institution resources or non-institution (community) resources."[1] *Id.*

---

[1]28 C.F.R. § 545.11(b) reads in its entirety:

(b) Payment. The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff. Payments may be made from institution resources or non-institution (community) resources. In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non–UNICOR work assignments, set forth in paragraphs (b)(1) and (b)(2) of this section.

(continued...)

Mr. Thurston arrived at the United States Penitentiary at Leavenworth, Kansas, on June 4, 2008. He began with $171.74 in his inmate trust account. On June 12, 2008, he signed a contract to participate in the IFRP; his plan called for quarterly payments of $25 to be withdrawn from his account beginning in September 2008. He had no institution work assignment, and by the time he was to make his first payment, he had depleted his account balance to $.79. He did not make his first payment and was placed on refusal status on October 1, 2008. He filed this suit on January 29, 2009.

The penalties for not participating in the IFRP include (1) notification to the Parole Commission of the refusal to participate, (2) ineligibility for furlough, (3) ineligibility for performance, bonus, or vacation pay, (4) ineligibility for work

---

[1](...continued)
The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).

(1) Ordinarily, the minimum payment for non-UNICOR and UNICOR grade 5 inmates will be $25.00 per quarter. This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources.

(2) Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay to the payment process. Any allotment which is less than the 50% minimum must be approved by the Unit Manager. Allotments may also exceed the 50% minimum after considering the individual's specific obligations and resources.

detail outside the facility in which he is incarcerated, (5) ineligibility for UNICOR (which is a federal work program designed to "employ and provide job skills training" to federal inmates, UNICOR, FPI General Overview FAQs, http://www.unicor.gov/about/faqs/faqsgeneral.cfm), (6) more stringent monthly commissary spending limits, (7) quartering in the lowest housing status, (8) ineligibility for community-based programs, (9) ineligibility for a release gratuity, and (10) ineligibility for an incentive for participation in a residential drug-treatment program. *See* 28 C.F.R. § 545.11(d). We question whether the implementation of these penalties would change the conditions of Mr. Thurston's incarceration enough to form the basis for a cognizable habeas claim. *See Glaus v. Anderson*, 408 F.3d 382, 387–88 (7th Cir. 2005). But because that issue is not jurisdictional, we shall address the merits of Mr. Thurston's contentions.

Mr. Thurston claimed in his § 2241 application (1) that the Bureau of Prisons misinterpreted IFRP regulations and (2) that his sentencing court improperly delegated the setting of his IFRP payment obligations. The Bureau's alleged misinterpretation of the regulations is the only issue he raises on appeal.

Mr. Thurston reads 28 C.F.R. § 545.11(b) to say that when he is "unassigned to any job and has no institutional income," Aplt. Br. at 4, the Bureau may not require him to satisfy his obligations under an IFRP payment plan to which he agreed, and may not subject him to sanctions for failing to make timely payments. He asserts that § 545.11(b) allows payments to be withheld

from his account only if he has a work assignment as described in § 545.11(b)(1) or (2). He further argues that requiring him to continue to make IFRP payments would necessarily require him to do so with funds sent to him by his family, contrary to the intent of the regulations.

Mr. Thurston's view of the regulations is incorrect. To begin with, § 545.11(b) does not by its terms limit its applicability to inmates holding work assignments. *See* 28 C.F.R. § 545.11(b). Although § 545.11(b) does not state a minimum payment amount for inmates without work (as do § 545.11(b)(1) and (2) for inmates who are employed), it contains no suggestion that unemployed inmates are exempt from making their agreed-to IFRP payments.

We also reject his argument that IFRP payments should not be made from funds received from an inmate's family. The regulation states: "The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff. Payments may be made from institution resources or non-institution (community) resources." 28 C.F.R. § 545.11(b). Thus, § 545.11(b) "authorize[s] the Bureau to consider funds received from sources other than prison work in determining whether an inmate is able to participate in the IFRP." *Pierson v. Morris*, 282 F. App'x 347, 348 (5th Cir. 2008) (unpublished). We see no indication that family gifts are excluded from the category of "non-institution (community) resources." Mr. Thurston points out that $75 per month is exempted

from assessments for the IFRP so that the inmate can maintain telephone contact with his family; but he fails to explain why it should follow from that exemption that all family contributions must be exempted.

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge



LOGIN | REGISTER

Not sure what you are looking for?
SEARCH

[Advanced Search]

**Events/Tradeshows**

**Aug 10, 2010 - Aug 12, 2010**
GSA SmartPay Atlanta, GA Show Link

**Click Here »**
For All Tradeshows

**Why Buy UNICOR**

**Corporate Overview**

**FPI Inmate Programs**

**Contracting Opportunities**

**Small Business Goals**

**Purchase/Waiver Procedures & Policies**

**Ordering/Payment Options**

**Catalogs & Publications**

**Forms**

**Schedule of Products & Services**

**Board Members**

**Partnerships**

**Ombudsman/Constituent Relations**

**Sales Representatives/Contacts**





⊘ ORDER STATUS | 👤 CONTACT A SALES REP | 🚩 HELP | 🏠 HOME

Home » About UNICOR » FAQs » General Overview

# FPI General Overview FAQs

1. What is Federal Prison Industries (trade name UNICOR)?
2. What is the derivation of the term "UNICOR"?
3. How much does the program cost taxpayers?
4. Please provide a FY 2009 "year in review" summary of FPI

*1. What is Federal Prison Industries (trade name UNICOR)?*
Federal Prison Industries (commonly referred to as FPI, or by its trade name UNICOR), is a wholly-owned government corporation established by the Congress June 23, 1934. Its mission is to employ and provide job skills training to the greatest practicable number of inmates confined within the Federal Bureau of Prisons; contribute to the safety and security of our Nation's federal correctional facilities by keeping inmates constructively occupied; provide market-quality products and services; operate in a self-sustaining manner; and to minimize FPI's impact on private sector business and labor.

*2. What is the derivation of the term "UNICOR"?*
"UNICOR" is simply the trade name for Federal Prison Industries, Inc.

*3.How much does the program cost taxpayers?*
The corporation is self-sustaining and receives no appropriated funds. Revenues generated by sales are used to cover the program's operational expenses. All of FPI's revenues are eventually returned to the community.

For related information about UNICOR, click on any of the following topics:

Factory with Fences (retrospective on FPI);
FPI's 2009 Annual Report ;
FPI's Board of Directors & Management Staff;
FPI's Constituent Relations/Ombudsman;
Public Notices, Meeting Minutes
Procurement

*4. Please provide a FY 2009 "year-in-review" summary of FPI*
Number of Inmate Workers: 18,972
Percent of Eligible Population Employed (medically-able/sentenced): 17%
Employment Goal: 25%
Inmate Pay Rates: 23 cents to $1.15 per hour
Number of Factories: 109
Distribution of FPI Revenues:
80% toward purchase of materials/supplies from private sector vendors;
16% for staff salaries;
4% for inmate pay
---------
100% returned to the private sector

FY 2009 Net Sales: $889.4 million
FY 2009 Net Loss: $34.9 million
FY 2009 Sales Dollars Spent on Purchases from Private Sector: $576.7 million

Products: Currently FPI produces over 80 products and services for sale to the Federal Government. Click on UNICOR Products & Services to view offerings among seven major product/service groups.

Customer Service ● Public Notices ● Privacy ● SiteMap
Accessibility ● Disclaimer ● DOJ Legal Policies

DOJ

Last viewed by Judge Harris L. Hartz
George A. Mocsary on 7/6/2010.